**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BENJAMIN ROTHERHAM and CAROLINE ROTHERHAM, h/w <br><br> Plaintiffs, <br><br> vs. <br><br> SUPERFOODS, INC., d/b/a LIVE IT UP; AVIVA NATURAL SUPPLEMENTS, LLC; TRAFA PHARMACEUTICAL, INC. <br><br> Defendants | CIVIL DIVISION <br><br> CASE NO. <br><br> Complaint for Damages <br> Jury Trial Demanded |

**CIVIL ACTION – COMPLAINT**

Plaintiffs Benjamin and Caroline Rotherham, by and through their attorneys, Saltz Mongeluzzi Bendesky, PC and Held & Hines, LLP, alleges upon information and belief as follows:

1. Plaintiff, Benjamin Rotherham, is a resident of Mertztown, Pennsylvania, and is therefore a citizen of the Commonwealth of Pennsylvania.

2. Plaintiff, Caroline Rotherham, is a resident of Mertztown, Pennsylvania, and is therefore a citizen of the Commonwealth of Pennsylvania.

3. Plaintiffs purchased and consumed a toxic, adulterated, and/or contaminated food product, namely Live it Up brand Super Greens supplement powder manufactured, prepared, packaged, distributed, and/or sold by Defendant, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc., which resulted in Plaintiffs suffering the permanent injuries and damages alleged herein.

4. Defendant Superfoods, Inc. d/b/a Live it Up is a for-profit company incorporated in the State of Delaware, with its headquarters and principal place of business located at 228 Park Ave. S Unit 45397, New York, NY 10003 and is a citizen of the State of New York.

5. Defendant, Aviva Natural Supplements, LLC is the manufacturer of the Live it UP brand Super Greens supplement powder. Aviva Natural Supplements, LLC is a for profit limited liability company incorporated under the laws of the State of New Jersey, with its headquarters and principal place of business located at 26 Van Dyke Ave., Unit 1, New Brunswick, New Jersey, 08901.

6. Upon information and belief, Defendant, Aviva Natural Supplements, LLC sourced the moringa leaf used in the defective Live it Up brand Super Greens supplement powder from Defendant Trafa Pharmaceutical, Inc.

7. Defendant, Trafa Pharmaceutical, Inc. is a for-profit corporation incorporated under the laws of the Commonwealth of Massachusetts, with its headquarters and principal place of business located at 140 Padgette Street, Unit D, Chicopee Massachusetts, 01022.

8. At all times relevant hereto, Defendants, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc. were engaged in the sourcing of ingredients for, as well as the preparation, manufacture, packaging, distribution and/or sale of a toxic, adulterated and/or contaminated food product, namely the Super Greens supplement powder.

## JURISDCTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 exclusive of costs and it is between citizens of two different states.

10. Venue in the United States District Court for the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant, Superfoods, Inc. d/b/a Live it Up

resides in this judicial district and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district.

## **FACTUAL BACKGROUND**

11.  It is believed that Salmonella was first discovered in 1885, but today, the number of known serotypes of Salmonella bacteria totals over two thousand. And in recent years, concerns have been raised, as particular strains of Salmonella have become resistant to traditional antibiotics.

12.  There are two Salmonella species: Salmonella enterica (S. enterica) and Salmonella bongori (S. bongori). S. bongori strains predominantly colonize cold-blooded reptiles, whereas S. enterica strains are capable of infecting both humans and mammals.

13.  Based on factors such as morphology, structure, mode of reproduction, and other criteria, the two species are further classified into subgroups called serotypes or serovars. More than 2,600 serotypes have been described for Salmonella, and they are characterized by the type(s) of animal they are found in or by the clinical symptoms they cause. Of these, less than 100 are responsible for most human Salmonella infections.

14.  Salmonella are found in nature in the intestinal tract of wild and domesticated animals and in humans. Salmonella poisoning can occur when a person ingests contaminated fecal particles transmitted by another infected human or animal.

15.  Most *Salmonella* infections are caused by eating contaminated food. One study found that 87% of all confirmed cases of *Salmonella* are foodborne. Foods of animal origin, including meat, poultry, eggs, or dairy products can become contaminated with *Salmonella*. Eating uncooked or inadequately cooked food—or food cross contaminated with uncooked or undercooked products—can lead to human infections.

16.   In the past two decades, consumption of produce, especially sprouts, tomatoes, fruits, leafy greens, nuts, and nut butters, has been associated with *Salmonella* illnesses. The surface of fruits and vegetables may be contaminated by human or animal feces. Changes in food consumption and production, as well as the rapid growth of international trade in agricultural products, have facilitated the transmission of Salmonella associated with fresh fruits and vegetables.

17.   *Salmonella* infections can produce a broad range of disease, from no symptoms to severe illness. The most common clinical presentation is acute gastroenteritis. Symptoms commonly incl. diarrhea and abdominal cramps, often accompanied by fever of 100°F to 102°F (38°C to 39°C). More serious infections may also involve bloody diarrhea, vomiting, headache, and body aches.

18.   The incubation period, or the time from ingestion of the bacteria until the symptoms start, is generally 6 to 72 hours; however, there is evidence that in some situations the incubation can be longer than 10 days. However, *Salmonella* bacteria can persist in the intestinal tract and stool for many weeks after the resolution of symptoms.

19.   *S.* Typhi and *S.* Paratyphi are capable of causing systemic illness if they invade the bloodstream (termed "bacteremia"). "Septicemia" or "sepsis" (bloodstream infection or "blood poisoning") occurs if the bacteria multiply in the blood and cause the immune system to respond by activating inflammatory mechanisms. This may result in the development of "systemic inflammatory response syndrome," or "SIRS."  SIRS includes tachycardia, tachypnea, fever, and abnormal white blood count.

20.   When the bacteria involved are *S.* Typhi or *S.* Paratyphi, this serious illness is called e. d, or paratyphoid fever. Symptoms may start gradually and include fever, headache, malaise,

lethargy, and abdominal pain. In children, it can present seemingly innocuously as a non-specific fever. The incubation period for *S.* Typhi is usually 8 to 14 days, but it can range from 3 to 60 days. For *S.* Paratyphi infections, the incubation period is similar to that of nontyphoidal *Salmonella*—one to 10 days.

21. Medical treatment is acutely important, though, if the patient becomes severely dehydrated or if the infection spreads from the intestines. Persons with severe diarrhea often require re-hydration, usually with intravenous (IV) fluids. But antibiotics are not necessary or indicated unless the infection spreads from the intestines, at which time the infection can be treated with ampicillin, gentamicin, trimethoprim/sulfamethoxazole, or ciprofloxacin. Unfortunately, though, some *Salmonella* bacteria have become resistant to antibiotics, largely as a result of the use of antibiotics to promote the growth of feed animals.

22. Reactive Arthritis, formerly referred to as Reiter syndrome, can follow as a result of a Salmonella infection, and occurs where there is an inflammation of one or more joints, following an infection localized at a site distant from the affected joints. The predominant site of the infection is the gastrointestinal tract. Reactive arthritis can be post-infection, meaning that the infection may not be active when diagnosed, and although the resulting joint pain and inflammation can resolve over time, permanent joint damage can occur.

23. The symptoms of reactive arthritis include pain and swelling in the knees, ankles, feet, and heels. Less frequently, the upper extremities may be affected, including the wrists, elbows, and fingers. Tendonitis (inflammation of the tendons) or enthesitis (inflammation where tendons attach to the bone) can occur. Other symptoms may include prostatitis, cervicitis, urethritis (inflammation of the prostate gland, cervix, or urethra), conjunctivitis (inflammation of the

membrane lining the eyelid), or uveitis (inflammation of the inner eye). Ulcers and skin rashes are less common.

24.   Symptoms can range from mild to severe and can occur anywhere from three days to six weeks after the antecedent infection and may involve one or more joints, though some patients continue to experience complications for years.

25.   Irritable bowel syndrome (IBS) is a functional disorder of the gastrointestinal tract. The hallmark symptoms of IBS are abdominal pain and altered bowel habits, ranging from constipation to diarrhea, or alternating diarrhea and constipation. Abdominal pain is usually crampy in nature, but character and sites can vary. In some patients, the pain is relieved by defecation but, in others, defecation may worsen the pain. Additional symptoms may include bloating, straining at stools, and a sense of incomplete evacuation.

26.   The observation that the onset of IBS symptoms can be precipitated by gastrointestinal infection dates to the 1950s. Mechanisms are not known but include changes in the microbiome, use of antibiotics to treat the infection, and an increase in enteroendocrine cells.

27.   Another consequence of infective gastroenteritis is the disruption of normal gut flora. Studies on postinfectious IBS have provided etiological insights into the pathogenesis of IBS. It is well documented that following infective gastroenteritis, more than 10% of affected individuals go on to develop postinfectious IBS.[18] The risk of postinfectious IBS appears greater with bacterial gastroenteritis compared to viral gastroenteritis.

***Salmonella* Outbreak linked to Live it Up brand Super Greens supplement powders.**

28.   Upon information and belief, more than 45 people infected with the outbreak strain of *Salmonella* associated with Live It Up brand Super Greens have been reported from 21 states including Alabama, Connecticut, Delaware, Iowa, Maine, Michigan, Missouri, Nebraska,

Pennsylvania, Tennessee, Utah, Washington, Massachusetts, New York, South Carolina, Vermont, Minnesota, Ohio, Illinois, Kentucky and Wisconsin.

29. The first reported illnesses began in August 2025. Of 41 people with information available, it is believed that 12 have been hospitalized.

30. Whole Genome Sequencing of the *Salmonella* showed that bacteria from sick people's samples are closely related genetically. This suggests that people in this outbreak got sick from the same food.

31. On January 14, 2026, Live it Up informed the Food and Drug Administration (FDA) that it would initiate a voluntary recall.

32. The Centers for Disease Control and Prevention (CDC) is advising people not to eat, sell, or serve recalled Live it Up brand Super Greens supplement powders.

## PLAINTIFF'S ILLNESS AND INJURIES

33. Plaintiff, Benjamin Rotherham is a decorated veteran of the United States Marine Corps who is passionate about health, fitness and nutrition. He is a triathlon coach, is the founder of Mission Multisport coaching and is an extraordinary athlete in his own right, with notable accomplishments in a wide range of athletic disciplines, including the following:

- 9 time Ironman finisher
- Ironman World Championship qualifier
- Multiple time 70.3 Ironman World Championships qualifier
- 8 time USAT National Championship qualifier
- 3 time USA Triathlon All-American Athlete
- Multiple Overall Triathlon wins (sprint, Oly and 70.3)
- 70.3 NC AG (35-39) winner
- 2022 PA State TT Champion
- 16:45 5K Personal Record
- 4:56 Mile Personal Record



**Plaintiff, Benjamin Rotherham, Prior to Contracting Salmonella From Defendant's Contaminated Live it Up brand Super Greens Supplement Powder**

34.  Plaintiff selected Defendants' Live It Up brand Super Greens Supplement Powder, based upon Defendant's representations that its products were effective and safe for human consumption and at all relevant times, consumed Defendants' Live It Up brand Super Greens Supplement Powder in the manner prescribed.

35.  On or about November 19, 2025, after consuming Defendants' Live It Up brand Super Greens Supplement Powder, Plaintiff Benjamin Rotherham began to feel extremely ill. He displayed  symptoms of nausea, stomach cramping, muscle aches, body aches, fatigue and headache as well as severe diarrhea, occurring up to twenty times per day.

36.  On December 1, 2025 Plaintiff was admitted to Lehigh Valley Hospital through the Emergency Department, with reports of gastrointestinal symptoms, including fever, chills, and bloody diarrhea. Testing confirmed the presence of Salmonella. He remained inpatient for four days.

37. As a direct and proximate result of the carelessness, negligence and other liability producing conduct of Defendants, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc., Plaintiff, Benjamin Rotherham was caused to sustain a salmonella enteritis infection, he was caused to suffer damage to his liver, he was caused to suffer damage to his gastrointestinal systems, he was caused to suffer damage to his muscles bones, joints and ligaments, he was caused to suffer damage to his cardiovascular system, he has in the past been required and may in the future continue to be required to submit to x-rays, MRIs and other diagnostic studies; he has in the past suffered and may in the future continue to suffer agonizing aches, pains and mental anguish; he has suffered from permanent scarring; he has in the past and may in the future continue to endure pain and suffering; he has in the past and may in the future continue to be disabled from performing his usual duties, occupations, avocations, all to his great detriment and loss.

38. As a direct and proximate result of the carelessness, negligence and other liability producing conduct of Defendants, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc., Plaintiff, Benjamin Rotherham, has incurred various expenses, including recoverable medical expenses and bills, and may be obligated to continue to expend monies and incur further obligations for his medical care and treatment, for an indefinite period of time in the future.

39. Plaintiff has sustained and makes claim for pain and suffering, loss of physical function, permanent physical, mental and psychological injuries, humiliation and embarrassment, loss of life's pleasures, permanent scarring, and any all other damages to which he is entitled or may be entitled under the law of the State of New York.

40. Plaintiffs have suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of Defendants, in an amount that shall be fully proven at the time of trial. These damages include but are not limited to past and future pain and suffering, past and future damages for loss of enjoyment of life, past and future emotional distress, past and future medical and related expenses, including pharmaceutical expenses, travel and travel-related expenses, past and future lost wages, and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

41. The above- described injuries, damages and losses suffered by Plaintiffs individually and collectively were all caused by Plaintiffs' exposure to Defendant, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc.'s Super Greens supplement powder.

42. Plaintiff's injuries and damages were caused solely by the acts of Defendants jointly and/or severally and/or through their joint and individual agents, servants, workmen and/or employees as hereinbefore and hereinafter set forth.

43. Plaintiff's injuries and damages were not caused by any act or omission on the part of Plaintiff.

## CAUSES OF ACTION
## PLAINTIFFS V. ALL DEFENDANTS
## STRICT LIABILITY – COUNT I

44. Plaintiffs incorporate the preceding paragraphs of this Complaint, by this reference, as if each and every one of these paragraphs was set forth here in its entirety.

45. At all times relevant hereto, Defendants. Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc., prepared, manufactured, packaged, distributed, and/or sold the contaminated food product that was purchased and consumed by Plaintiff, namely Live it Up brand Super Greens supplement powder.

46. The adulterated product that Defendants prepared, manufactured, packaged, distributed, and/or sold was, at the time it left Defendants' control, defective and unreasonably dangerous for its ordinary and expected use by the intended public, including Plaintiffs, because Defendants' product was contaminated by *Salmonella*, a bacterium dangerous to human health.

47. Because of its contamination by *Salmonella*, the adulterated product was not put on the market by a reasonably prudent manufacturer or seller, which knew, or by reasonable investigation, should have known of its dangerous condition.

48. The adulterated product that Defendants prepared, manufactured, packaged, distributed, and/or sold was delivered to the Plaintiffs without any change in its defective condition. The adulterated product that Defendants prepared, manufactured, packaged, distributed, and/or sold was used by Plaintiffs in the manner expected and intended.

49. Defendants owed a duty of care to the public, including Plaintiffs, to prepare, manufacture, package, distribute and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health, including *Salmonella*. Defendant breached this duty.

50. Defendants owed a duty of care to the public, including Plaintiffs, to prepare, manufacture, package, distribute and/or sell food that was fit for human consumption, and that was safe to consume to the extent contemplated by a reasonable consumer. Defendant breached this duty.

51. As a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated food product that Defendants prepared, manufactured, packaged, distributed, and/or sold, as set forth above, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

## PLAINTIFFS V. ALL DEFENDANTS
## BREACH OF WARRANTY – COUNT II

52. Plaintiffs incorporate the preceding paragraphs of this Complaint, by this reference, as if each and every one of these paragraphs were set forth here in its entirety.

53. Defendants, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc., are liable to Plaintiffs for breaching express and implied warranties that it made regarding the adulterated product that Plaintiffs purchased and consumed. These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use. Specifically, the Defendants expressly warranted, through its sale of food to the public and by the statements and conduct of its employees and agents, that the food product it prepared, manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise adulterated with a harmful pathogen, namely *Salmonella,* and that the food product had been safely produced under sanitary conditions.

54. The *Salmonella* contaminated food product that is the subject of this action would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

55. The *Salmonella* contaminated food product that is the subject of this action was not fit for the uses and purposes intended, *i.e.,* human consumption, and the product was therefore in breach of the implied warranty of fitness for its intended use.

56. Defendants breached the implied warranties with regard to the contaminated food product that it sold, and that Plaintiffs consumed, causing them injuries and losses.

57. As a direct and proximate cause of Defendants' breach of warranties, as set forth above, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

## PLAINTIFFS V. ALL DEFENDANTS
## NEGLIGENCE – COUNT III

58. Plaintiffs incorporate the preceding paragraphs of this Complaint, by this reference, as if each and every one of these paragraphs was set forth here in its entirety.

59. Defendants, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc., owed Plaintiffs a duty to use reasonable care in the preparation, manufacture, packaging, distribution, and/or sale of its food product, the observance of which duty would have prevented or eliminated the risk that Defendants' food product would be adulterated and/or otherwise become contaminated with any dangerous pathogen. Defendant, however, breached this duty and were therefore negligent.

60. Defendants had a duty to comply with all federal, state, and local statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, storage, and/or sale of its food product, but failed to do so, and was therefore negligent. Plaintiffs were among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the preparation, manufacture, packaging, distribution, and sale of similar food products. Defendant, however, breached this duty and were therefore negligent.

61.    Defendants had a duty to properly supervise, train, and monitor its respective employees, and to ensure that its respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, packaging, and sale of its food products. Defendant, however, breached this duty and were therefore negligent.

62.    Defendants had a duty to use supplies, and other materials for preparation, packaging, manufacturing, and/or sale that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state and local laws, ordinances, regulations, codes and provisions and that were clean, free from adulteration and safe for food contact or use for food products. Defendants, however, breached this duty and were therefore negligent.

63.    As a direct and proximate result of Defendants' negligence as described above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## PLAINTIFFS V. ALL DEFENDANTS
## NEGLIGENCE *PER SE* – COUNT IV

64.    Plaintiffs incorporate the preceding paragraphs of this Complaint, by this reference, as if each and every of these paragraphs was set forth here in its entirety.

65.    Defendants, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc., had a duty to comply with all applicable state and federal laws and regulations designed to ensure the safety, wholesomeness, and purity of food products, including but not limited to relevant state food safety rules and the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, *et seq.*).

66.    Plaintiffs were among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the preparation, manufacture, packaging, distribution, and sale of similar food products.

67.    In breach of this duty, Defendants failed to comply with the provisions of the relevant health and safety acts identified above, and, as a result, was negligent *per se* in its preparation, manufacture, distribution, packaging, and/or sale of adulterated food.

68.    As a direct and proximate result of conduct by Defendants that was negligent *per se*, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

## CAROLINE ROTHERHAM V. ALL DEFENDANTS
## LOSS OF CONSORTIUM / PER QUOD – COUNT V

69.    Plaintiff, Caroline Rotherham, incorporates by reference all preceding paragraphs of this complaint, the same as if fully set forth hereinafter.

70.    At all times relevant hereto, plaintiff, Caroline Rotherham, was the lawfully wedded wife of husband-plaintiff, Benjamin Rotherham.

71.    As a result of the injuries sustained by Benjamin Rotherham, wife-plaintiff, Caroline Rotherham, has been and will continue to be deprived of the love, assistance, companionship, consortium and society of her, husband, plaintiff, Benjamin Rotherham, all to her great loss and detriment.

## JURY DEMAND

72.    Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Superfoods, Inc. d/b/a Live it Up, Aviva Natural Supplements, LLC and Trafa Pharmaceutical, Inc., for all general special, incidental and consequential damages suffered by Plaintiffs because of the Defendants'

conduct, in excess of $75,000, together with attorneys' fees, interest, costs of suit, and such other

damages and relief as the Court deems just and appropriate.

Respectfully submitted,

**HELD & HINES, LLP**

By: _____

PHILIP M. HINES
4815 Avenue N
BROOKLYN, NEW YORK 11234
P: (718) 531-9700
phines@heldhines.com

**SALTZ MONGELUZZI BENDESKY**

By:     *J. Peter Veloski /s/*                .
J. PETER VELOSKI (to be admitted *pro hac vice*)
1650 MARKET STREET, 52ND FLOOR
PHILADELPHIA, PA 19103
(215) 496-8282
Pveloski@smbb.com
*Counsel for Plaintiff, Benjamin Rotherham and Caroline Rotherham*

Date:   July 23, 2026